**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Joe Hand Promotions, Inc., )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>Richard D. King, individually and as an officer, )<br>director, shareholder, and/or principal of )<br>GCB of SC, LLC, d/b/a Garden City Beach Bar )<br>and Grill, and GCB of SC, LLC, )<br>)<br>Defendants. )<br>_____ ) | **C/A No.: 4:12-cv-245-RBH**<br><br>**ORDER** |

On January 26, 2012, Joe Hand Promotions, Inc. ("Plaintiff") filed an action in this court against Richard D. King, individually and as an officer, director, shareholder, and/or principal of GCB of SC, LLC, d/b/a Garden City Beach Bar and Grill, and GCB of SC, LLC ("Defendant"). Plaintiff alleges that it owned the exclusive television distribution rights for a boxing match and that Defendant exhibited the fight at a commercial establishment without paying a licensing fee to Plaintiff. Plaintiff has asserted claims under the Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553, as well as a state law claim for conversion. Defendant did not file an answer or otherwise respond to Plaintiff's complaint. On May 31, 2012, in response to Plaintiff's request, the clerk entered default as to Defendant. On September 27, 2012, Plaintiff filed a motion for default judgment.

The Court finds there is no need for an evidentiary hearing and that a decision is properly reached on the basis of the uncontested pleadings and detailed affidavits submitted. *See* Fed. R. Civ. P. 55(b)(2)("The Court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (c) establish the truth of any

1

allegation by evidence; or (D) investigate any other matter."); *Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 507 (4th Cir. 1998)("[I]n some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing.") "If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing." *JTH Tax, Inc. v. Smith*, No. 2:06cv76, 2006 WL 1982762, at *2 (E.D. Va. June 23, 2006).

The Court has reviewed the Plaintiff's submissions, and has determined that they adequately support the Plaintiff's claims and provide a reasonable basis upon which to rest an award of damages that is easily computable. Simple mathematical computations are supported by detailed affidavits and documentary evidence and thus no evidentiary hearing is necessary.

## **FACTS**

The following facts are alleged in Plaintiffs' complaint and, due to Defendant's default, are accepted as true. Defendant is a South Carolina citizen and an officer, director, shareholder and/or principal of GCB of SC, LLC. Defendant has supervisory control over the Garden City Beach Bar and Grill. Plaintiff purchased the right to distribute the UFC 112: Invincible Broadcast, including all undercard bouts and the main prizefight, via closed circuit television and encrypted satellite signal (the "Program"), which took place on April 10, 2010. Defendant or his agents exhibited this program at the time of its transmission with full knowledge that unauthorized interception was unlawful. This interception was done willfully and for the purposes of commercial advantage or financial gain.

The following facts are set out in a sworn affidavit by private investigator Randy Lawrence. *See* ECF No. 11-5. Lawrence went to Garden City Beach Bar and Grill on April 10, 2010, and observed that the fights were being shown on 3 televisions. ECF No. 11-5. He states that the

approximate capacity of the bar is 80 customers and that he observed 41-43 customers present. According to a sworn affidavit by Plaintiff's president, Joe Hand, Jr., based on a capacity of between 51 and 100 persons, the license fee for the Defendant to purchase the rights to exhibit the Program at Garden City Bar and Grill would have cost $1,100.00.  ECF No. 11-4.

## DISCUSSION

**Liability**

Under 47 U.S.C. § 605(a), "no person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney."   Any person aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C. § 605(e)(3). The aggrieved party may recover actual damages or statutory damages between $1,000 and $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). Furthermore, if the court finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may increase the damages by an amount not more than $100,000 for each violation. 47 U.S.C. §605(e)(3)(C)(ii).

Under 47 U.S.C. §553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. §553(a)(1). Any person aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees.  47 U.S.C. § 553(c).  The aggrieved party may recover actual damages or statutory damages between $250 and $10,000 for all violations involved in the action.  47 U.S.C. § 553(c)(3)(A).  Furthermore, if the court finds that "the violation was committed willfully and

3

for purposes of commercial advantage or private financial gain," the court may increase the damages by an amount not more than $50,000. 47 U.S.C. §553(c)(3)(B).

The Seventh Circuit has held that § 605 and § 553 employ mutually exclusive categories, specifically that a "communications service offered over a cable system" is not a "radio communication." *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996). In other words, a person who steals cable services at the point of delivery is liable only under § 553, even if the signals were transmitted by radio at some earlier point. On the other hand, the Second Circuit has disagreed and held that some cable transmissions may also constitute "radio communications" under § 605. *International Cablevision, Inc. v. Sykes*, 75 F.3d 12, 133 (2d Cir. 1996). The Fourth Circuit has not considered the question. Consistent with other courts in the District of South Carolina, this court finds that the reasoning of *Norris* is more persuasive. *See Columbia Cable TV Co., Inc. v. McCary*, 954 F.Supp. 124 (D.S.C. 1996).

As a result, Defendants are liable under § 605 only if they exhibited radio or satellite communications without authorization and liable under § 553 only if they received cable communications without authorization. Plaintiff has alleged that the Program was received and exhibited without authorization. Plaintiff notes that the Program could have been received through various media, including radio, satellite, and cable and that there is no way to determine how Defendant received the Program without the benefit of discovery. For this reason, Plaintiff requests to proceed under § 605, which authorizes higher damages. The court finds this to be a reasonable solution. The court finds that the Defendant violated 47 U.S.C. § 605 by exhibiting interstate radio communications without authorization to customers at a commercial establishment. Furthermore, based on Plaintiff's well-pleaded allegations, the court finds that the violation was committed wilfully and for the purposes of commercial advantage or financial gain.

Plaintiff also seeks damages based on a tort theory of conversion. However, recovery under both § 605 and the tort of conversion would result in an impermissible double recovery for the same loss. *See, e.g., J & J Sports Prod., Inc. v. J.R. 'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432 at *2 (D.S.C. Apr. 5, 2010). Because Plaintiff has indicated its choice to proceed under § 605, the court will address damages only under § 605.

**Damages**

Rather than attempt to prove actual damages, Plaintiff elects to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(II). Plaintiff seeks an award of $10,000, the maximum authorized amount. As explained above, it would have cost $1,100.00 for Defendants to purchase the rights to exhibit the Program. The court finds that an award of $1,100.00 fairly approximates the actual harm to Plaintiff resulting from Defendants' unauthorized exhibition of the Program.

Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) because Defendant's violation was committed willfully and for the purposes of commercial advantage or financial gain. Plaintiff requests $50,000. Plaintiff argues that it loses much revenue due to unauthorized commercial exhibition of its boxing programs because legitimate bars and restaurants cannot afford to compete with "pirate" bars and restaurants. Plaintiff explains that due to the significant costs of purchasing its programs, legitimate bars and restaurants typically must charge a cover charge when they are showing the programs. Plaintiff argues that pirate bars and restaurants gain a competitive advantage because they are able to show the programs without charging cover fees. Plaintiff further asserts that the defendant advertised that they were going to show the Event on the marquee outside the bar, providing additional evidence of wilfulness.

The court agrees that an enhanced award is necessary to deter the wilful piracy of Plaintiff's programs. In this case, Defendant unlawfully exhibited the Program on a flat screen television above

the bar, a flat screen in the back room, and on a projector on the wall to at least 43 customers. It is not hard to believe that piracy on this scale could provide Defendant with an unfair competitive advantage and harm Plaintiff by making it less likely that Defendant's competitors will purchase its programs. The court finds that enhanced damages in the amount of two times the basic statutory damages, or $2,200.00, provides just and adequate deterrence for such willful violations. Accordingly, the court awards total damages in the amount of $3,300.00.

**Attorney Fees**

The court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Because Plaintiff is an aggrieved party that has prevailed, it is entitled to recover attorney's fees. Plaintiff submitted the affidavit of counsel in support of its request for attorney fees. ECF No. 11-7.

In this default matter, no one has appeared to challenge the attorney fees Plaintiff seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates, the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awarded in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978).

Although the court must consider all twelve of the factors, the court is not required to rigidly

apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Servo News Co*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, supports attorney fees in the amount of $1,500.00. Based on the information and supporting documents before the court at this time, the court concludes that the judgment against Defendant should include an award of attorney's fees in the amount of $1,500 (6 hours at $250.00 per hour).

## **CONCLUSION**

Plaintiff's motion for default judgment is granted. The court finds that Defendants willfully violated 47 U.S.C. § 605. Judgment in favor of Plaintiff is entered against Defendants in the total amount of $4,800.00, comprising $3,300.00 in damages and $1,500 in attorney's fees.

**IT IS SO ORDERED**.

s/R. Bryan Harwell
R. Bryan Harwell
United States District Court

Florence, South Carolina
October 23, 2012